UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANTONIO D. SHANNON,

        Petitioner,

        v.                                  Case No. 15-C-604

BRIAN FOSTER,

        Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254

On December 18, 2009, following a seven-day trial, a Racine County jury found Antonio Shannon, along with his brother Terry, guilty of one count of first-degree intentional homicide, while armed, and one count of discharging a firearm from a vehicle as party to a crime, in violation of Wis. Stat. §§ 940.01(1)(a) and 941.20(3)(a), respectively. (Since they have the same last name, Antonio and Terry will generally be referred to by their first names.) Antonio was sentenced to life in prison plus five years, without the possibility for release to extended supervision and is now serving his sentence at Waupun Correctional Institution. After unsuccessfully appealing his conviction in state court, Antonio filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he claims that his conviction resulted from ineffective assistance of both his trial and appellate counsel in violation of his rights under the Sixth and Fourteenth Amendments.

## BACKGROUND

At around 3:30 a.m. on May 7, 2006, Terry and Antonio Shannon drove up to a car parked in the 600 block of College Avenue in Racine. Terry was driving, and Antonio was in the passenger seat. Four men were inside the parked car. Bennie Smith was in the driver's seat,

Courtney Taylor was in the front passenger seat, and Calvin Miller and Kinte Scott were in the backseat. Almost simultaneously with the Shannon car pulling up to the parked car, a gun battle erupted. All four people in the parked car were hit, and Smith died as a result of a gunshot wound to the head.

About an hour earlier, Terry had gotten into an argument with Smith at a restaurant. Antonio was not with Terry at the time, but Taylor, Miller and Scott were with Smith. Scott and Taylor testified that they did not know what the argument between Smith and Terry was about. They said that Terry was acting like he had a weapon. Taylor said that Smith wanted to fight Terry, but that Terry declined. Scott testified that Smith told Terry, "Why don't you be a man and put your gun down . . . and we get rid of all this past drama, whatever." Dkt. No. 25-10 at 178:03–05. Shortly thereafter, Smith, Taylor, Miller, and Scott left the restaurant without further incident.

After the four left the restaurant, they drove to Taylor's apartment on College Avenue. They had previously arranged to meet a couple of women there. Smith pulled the car over and parked on the street in front of Taylor's apartment. The two women had already arrived and were parked on the other side of the street. Smith rolled down his window and was talking with the two women when the Shannons arrived. It was at that point that the shooting began. Taylor noticed the car coming up from behind them and recognized Terry as the driver and Antonio sitting in the front passenger seat. Taylor testified: "I knew it was gonna be something. It's late at night, this is my house, like ain't nobody coming to talk or do nothing. Like we tried talking before." Dkt. No. 25-11 at 43:23–44:01. Taylor testified that the car stopped next to theirs and Antonio got out and began firing. Taylor returned fire with his own gun, a 9-millimeter Ruger. Antonio then got back into the car, and it sped off.

2

Police determined that twenty-six shots had been fired from at least three different guns from both inside and outside of the car Smith was driving. The guns, none of which were recovered, included a Sturm Ruger 9-millimeter, High Point 9-millimeter, and a third gun that fired a .40-caliber Smith and Wesson cartridge that was recovered from the back seat of the Smith vehicle. Each of the occupants of Smith's car was struck with bullets or fragments. Smith, the presumed target, had eight gunshot wounds, including a fatal shot to the head. The bullets that killed Smith likely came from a 9-millimeter High Point. Nine High Point casings were found outside of the car. After fleeing the scene apparently unscathed, the Shannons were observed setting the car they were driving on fire. They then fled to Chicago where they were later arrested.

The Shannons initially pleaded guilty to second-degree reckless homicide. They withdrew their pleas before sentencing, however, and proceeded to trial. Antonio was represented at trial by Attorney Richard Hart, and Terry was represented by Attorney John Birdsall. At trial, the Shannons presented alternative defenses: that the shot that killed Smith came from inside his car and thus, they did not cause his death, and alternatively, that someone inside Smith's car fired first and they acted in self-defense. The defense introduced evidence from three witnesses who testified as to statements they said they had heard Taylor, Martin, and Scott make at different times while they were in custody with them. Fradario Brim and Datarvus Shelton testified that Martin told them that Taylor fired first. Brim also testified that Martin told him that Taylor and Smith wanted to kill Terry, and Shelton testified that Martin thought Taylor had fired the shot that killed Smith. Witness Logan Tyler testified that Scott told him that he had fired from the back seat and accidentally shot Smith. Finally, defense expert Greg Martin opined that Smith was killed by a shot from someone in his own vehicle. On the advice of their attorneys, the defendants waived their right to testify on their own behalf. The jury convicted both Terry and Antonio of first-degree

3

intentional homicide and discharging a firearm from a vehicle as party to a crime, in violation of Wis. Stat. §§ 940.01(1)(a) and 941.20(3)(a).

Both appealed. Antonio, then represented by Attorney Mark Rosen, raised only one issue—whether the trial court erred in excluding as hearsay evidence a statement that Smith had said, "I'm gonna fuck up Terry." Rosen argued that the statement was admissible as a statement of Smith's then-existing state of mind and that it was relevant because it bolstered the claim of self-defense. The court of appeals decided that exclusion of the statement was error, but the error was harmless because it would not have changed the jury's verdict and denied the appeal. The Wisconsin Supreme Court denied Antonio's petition for review on February 19, 2014.

On May 19, 2015, Antonio filed his petition for relief under 28 U.S.C. § 2254 in this court. He immediately moved to stay the case so that he could exhaust his state court remedies on his claims of ineffectiveness of counsel. Antonio then filed a post-conviction motion in the trial court under Wis. Stat. § 974.06, in which he alleged that Hart was ineffective in failing to properly investigate his self-defense claim, in failing to prepare Shannon to testify at trial, and in advising him not to testify. Antonio also claimed that Rosen was ineffective in raising only a single frivolous issue on appeal rather than the stronger issues of his trial attorney's ineffectiveness. At the conclusion of an evidentiary hearing on the motion, the court concluded that Antonio had failed to establish that his attorneys provided ineffective assistance and denied his motion.

Antonio again appealed to the Wisconsin Court of Appeals. That court affirmed the circuit court's order denying his motion for post-conviction relief, and the Wisconsin Supreme Court denied review on June 11, 2019.

Antonio moved to lift the stay of proceedings in this court on July 25, 2019, and sought leave to file an amended petition to fully set forth his now exhausted claims. The case was

4

reassigned to the undersigned on July 26, 2019, and on July 30, 2019, the court entered an order lifting the stay and allowing 45 days in which to amend. Antonio filed his amended petition on September 11, 2019, and on September 25, 2019, the court entered an order summarily dismissing the case under Rule 4 of the Rules Governing Section 2254 Cases. The court vacated its summary order for dismissal on reconsideration, however, and ordered Respondent to file an answer. The case is now fully briefed. Having considered the entire record, the court now concludes that the petition should be denied.

## ANALYSIS

This petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2254. Under AEDPA, a federal court may grant habeas relief only when a state court's decision on the merits was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by" decisions from the Supreme Court, or was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d); *see also Woods v. Donald*, 575 U.S. 312, 315–16 (2015). A state court decision is "contrary to . . . clearly established Federal law" if the court did not apply the proper legal rule, or, in applying the proper legal rule, reached the opposite result as the Supreme Court on "materially indistinguishable" facts. *Brown v. Payton*, 544 U.S. 133, 141 (2005). A state court decision is an "unreasonable application of . . . clearly established federal law" when the court applies Supreme Court precedent in "an objectively unreasonable manner." *Id.* In addition, the determination of a factual issue made by a state court is presumed to be correct unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. This is, and was meant to be, an "intentionally" difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so

5

lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Ineffective assistance of counsel claims are evaluated under the standard established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court held that the standard involves two components. First, the defendant must show that counsel's performance was deficient, that it "fell below an objective standard of reasonableness." *Id*. at 687–88. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Second, "the defendant must show that the deficient performance prejudiced the defense." *Id.* "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

*Strickland* made clear that judicial scrutiny of counsel's performance is to be "highly deferential" because of the complexity of an attorney's task, the variety of ways of accomplishing it, and to avoid the distorting effect of hindsight:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless

6

> ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id*. at 689 (internal citations and quotations omitted). As for the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

Superimposing AEDPA's deferential standard for state convictions onto the deferential standard of *Strickland* creates a high bar that is difficult to overcome. The question is not whether the federal court thinks counsel's performance was ineffective and the state court erred. "Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington*, 562 U.S. at 105. When relief is sought under § 2254(d) on a claim of ineffective assistance of counsel, the question concerning counsel's performance is not whether counsel's actions were reasonable. "The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." *Id.* Applying that standard here, the court concludes Antonio's claims must fail.

Antonio argues that Hart's failure to investigate his self-defense claim was unreasonable. More specifically, Antonio argues that Hart's failure to elicit details from him about the event itself and the incidents leading up to event, and Hart's associated failure to follow up on suggestions from Antonio and his mother to interview witnesses to the previous incidents that would have bolstered his self-defense claim constituted deficient performance. Finally, Antonio contends that Hart's recommendation that he not testify made no sense in light of the fact that by the end of the trial, self-defense was his only viable defense. Antonio claims that Hart should have warned him that without his testimony he could not prevail on such a defense.

7

Hart testified in the post-conviction hearing that it is not his practice to ask defendants in criminal cases to relate specific details of what happened. Instead, to avoid the risk of their disclosing facts that might force him to withdraw or avoid placing them on the stand, he asks them what they have told police. Post-Conv. Hrg. Tr., Dkt. No. 25-18 at 9, 17. But he did not say he did not discuss the case with his client. In fact, Antonio told him about the prior shootings. *Id.* at 13. The hearing on Antonio's first post-conviction motion occurred more than five years after the trial, so understandably, Hart could not recall each conversation in detail. *Id.*

Hart also testified that his investigation included speaking to Antonio's mother, who told him about the shootings a couple of weeks prior to the night Smith was killed. Hart said he decided to "concentrate on eyewitnesses to the shooting" because he felt that the other events could be more damaging than helpful to Antonio since they might undermine the argument that he and his brother were on a "peace mission" and might be viewed as strengthening his motive for the shooting. *Id*. at 10–13. As Hart described it, the past shootings could be a "two edge sword." *Id*. at 12, 18.

And with respect to his advice that Antonio not testify, Hart explained that he was concerned that if he testified, the State would be able to introduce Antonio's criminal record, though Hart acknowledged that Antonio had fewer convictions than several of the State's witnesses. He was also concerned about Antonio's ability to reasonably explain his behavior, including fleeing the state, burning the car they were in, and how it might affect his credibility. *Id.* at 28–29. Hart noted that he had successfully asserted a self-defense claim in past cases in which his client did not testify and believed the record supported the defense here. *Id.* 30–31. The trial court obviously agreed since it submitted an instruction on the defense. Dkt. No. 25-16 at 137.

Based upon this testimony and the entire record in the case, the trial court concluded that Hart's representation was not deficient. The trial court found that Hart knew the history of the prior shootings and concluded that his reasons for not going into them, given the dangers he cited, was reasonable. The court likewise concluded that Hart continued to discuss the case and possible defenses with his client on an ongoing basis throughout the trial. He also consulted with Birdsall, who was representing Antonio's brother. Although the defense that the fatal shot had come from inside the car was significantly undermined in the State's case, it was not eliminated. Self-defense was more viable, and Hart had successfully asserted that defense even when his client did not testify. Given the risks of losing credibility if Antonio took the stand and testified on his own behalf, the trial court concluded that Hart's advice that Antonio not testify was also reasonable. Had Antonio nevertheless decided to testify, the trial court found that Hart would have prepared him. Applying *Strickland*'s deferential standard and based upon the entire record, the court concluded that Hart's performance was objectively reasonable and it was unnecessary to even address the question of prejudice. Antonio's motion was therefore denied. Dkt. No. 25-18 at 156–62.

The Wisconsin Court of Appeals affirmed. It accepted the trial court's factual findings and credibility determinations and concluded that "trial counsel's performance was objectively reasonable." Dkt. No. 25-5 ¶ 12. The appellate court also noted that Antonio had freely and voluntarily waived his right to testify on the record after a full colloquy with the trial judge. The court declined to second-guess trial counsel's rational conduct by hindsight. And since trial counsel did not perform deficiently, the court concluded that post-conviction counsel's failure to raise the claim did not constitute ineffective assistance by him. *Id.*

The state courts having reasonably and explicitly applied *Strickland* in the analysis, I conclude that Antonio is not entitled to relief under § 2254. Hart's concern, that going into the previous shootings, assuming the trial court would have allowed such evidence, created a serious risk of harming Antonio's defense and undermining the claim that Antonio and his brother did not go to ambush Smith and his friends, was not unreasonable. And contrary to his current attorney's contention, Antonio did not have to testify in order to successfully assert self-defense. The trial judge found the evidence sufficient to create a jury issue and so instructed the jury. Hart's advice that Antonio forego testifying on his own behalf was not unreasonable.

In fact, the evidence was such as to allow both defenses. The evidence clearly showed shots being fired from both the inside and the outside of the Smith vehicle. A defense expert testified that the fatal shots had come from inside the vehicle, and in addition, several witnesses recounted alleged statements by those inside the Smith car to the effect that Taylor had fired first and Smith had been killed by friendly fire. Notwithstanding the forensic evidence concerning ballistics and the injuries to Smith, counsel for both brothers argued the evidence was insufficient to establish beyond a reasonable doubt where the fatal shot had come from and that, in any event, Antonio shot in self-defense after Taylor opened fire. Neither argument was unreasonable in light of the evidence presented, the serious credibility problems of several of the State's key witnesses, and the high burden of proof resting with the State. That they were not successful does not demonstrate ineffective assistance of counsel.

## CONCLUSION

For the reasons explained above, Antonio Shannon is not entitled to habeas relief on any of his claims. His petition for writ of habeas corpus is therefore **DENIED**, and the Clerk is directed to enter judgment dismissing the case. A certificate of appealability will be issued on the claims

10

Case 2:15-cv-00604-WCG    Filed 10/23/20    Page 10 of 11    Document 42

of ineffective assistance of trial and appellate counsel. Although I conclude that Antonio is not entitled to habeas relief on these issues, it is possible that reasonable jurists would believe that Antonio has made a substantial showing of the denial of a constitutional right.

Antonio is advised that the judgment entered by the Clerk is final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. *See* Fed. R. App. P. 3, 4.

**SO ORDERED** at Green Bay, Wisconsin this 23rd day of October, 2020.

                                                            s/ William C. Griesbach
                                                            William C. Griesbach
                                                            United States District Judge